UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re Vista Marketing Group Ltd., Debtor. | Bankruptcy No. 12-B-83168<br>Chapter 7<br>Judge Thomas M. Lynch |

### MEMORANDUM OPINION

The purchaser of two gas station / convenience stores previously owned by the Debtor seeks the issuance of a rule to show cause against the Illinois Department of Revenue (the "Department") for the alleged violation of the court's order that authorized the sale of the stores. For the reasons discussed below, the court will issue a rule to show cause why the Department should not be held in contempt.

I.  Background

The Debtor filed a petition for protection under Chapter 11 of the Bankruptcy Code with this court on August 20, 2012.[1] Its primary assets were three gas station / convenience stores the Debtor owned and operated in the Rockford area. On November 21, 2012, the Debtor filed motions for authority to sell two of the stores (the "Properties") to Kelley Williamson Co. The Debtor attached to its motions copies of the sale agreements.

The parties to the sale agreed that Kelley Williamson would purchase the Properties "free and clear of all mortgages, lien and encumbrances." (Mot. to Sell, Ex. A. ¶1, Nov. 11, 2012, ECF No. 43; Mot. to Sell, Ex. A. ¶1, Nov. 11, 2012, ECF No. 44.) The Sale Agreements provided that the Debtor was to

---

[1] The case was subsequently converted to Chapter 7 on a motion by the U.S. Trustee on February 5, 2014. (ECF No. 188.)

Page **1** of **16**

> pay its current post-filing payables and liabilities in the ordinary course when due whether such liabilities are ascertainable as of the date of closing or subsequently ascertained, which accrue from the [Debtor's] operation of his business, including but not limited to utilities to the date of Closing, accrued wages, accrued vacation allowances, annual or sick leave or other accrued employee benefits, state and federal income taxes, <u>motor fuel taxes, sales, use and employment taxes</u>, workman's compensation, social security taxes, trade accounts payable and all other current or contingent liabilities of [the Debtor]. <u>The parties agree that [Kelley Williamson] is not assuming nor is it in any way responsible for paying any of the [Debtor's] liabilities, whether pre or post Chapter 11 filing</u>.

(*Id.* ¶9.1) (emphasis supplied). The Sale Agreements expressly considered responsibility for compliance with bulk transfer laws: "parties agree to comply with any applicable bulk transfer laws and [the Debtor] agrees to indemnify and hold [Kelley Williamson] harmless from any liability or expense by reason of such noncompliance." (*Id.* ¶9.2.) Finally, the agreements provided that the approval by this court of the proposed transactions "free and clear" to be a condition precedent:

> Bankruptcy Court shall have entered in the pending Chapter 11 Bankruptcy proceedings all orders which have become final and non-appealable that are necessary and appropriate to allow the sale of the Property free and clear of all debts, liabilities, liens, encumbrances and mortgages or security agreement to allow the conveyance and granting of merchantable title to [Kelley Williamson] solely on the payment of the Purchase Price herein provided without liability on the part of [Kelley Williamson] with respect to any obligations of [the Debtor], including, sales taxes, motor fuel taxes, other current or delinquent taxes and interest and penalties thereon, and other taxes, FICA or withholding liabilities, which is reasonably acceptable to [Kelley Williamson].

(*Id.* ¶10.4.)

With due notice, this court held two hearings on the motions. By order entered on January 3, 2013, the court granted the motions (the "Sale Order"). The Sale Order stated that the

> sale of the real and personal property as reflected in the Sale Agreements are approved in all respects. . . . Pursuant to Section 363(b)(1) of the Bankruptcy Code, the Debtor is authorized to sell the Properties free and clear of all liens with all liens to attach to the proceeds pursuant to 11 U.S.C. §363 and to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers to take any and all action that may reasonably be necessary or appropriate to implement the sale of the real and personal property."

(Order, Jan. 3, 2013, ECF No. 69.) The Sale Order further provides that the court retains jurisdiction with respect to its interpretation or enforcement. *Id.*

The Department filed an initial proof of claim in the pending bankruptcy case on February 4, 2013. In its initial submission, it claims $707,109.60 for unpaid use and sales taxes – classifying $440,278.18 as secured debt; $242,142.20 as priority unsecured debt; and $24,689.22 as general unsecured debt. (Proof of Claim No. 13-1, Feb. 4, 2013.)[2] On April 9, 2013, the Department submitted a second proof to claim for an additional $989,635.31 for unpaid motor fuel taxes, (Proof of Claim 14-1, Apr. 9, 2013), claiming that $887,326.70 is entitled to priority treatment.

The sale of the Properties closed on January 31, 2013. Kelley Williamson paid the total sales price of $3,720,000 to the Title Underwriters Agency. On or about February 11, 2013, the Department issued a Bulk Sales Stop Order under provisions of the Illinois Revenue Code[3] that directed Kelley Williamson to withhold $1,746,988.22 from the sale price for alleged unpaid tax liabilities of the Debtor. ("Stop Order"; Mot. for Rule, Ex. 1.B, ECF No. 76.) The Department threatened to seek payment from Kelley Williamson if the Debtor failed to remit this sum. In

---

[2] The Department does not contend that it has rescinded the Stop Order. However, it was disclosed during a hearing on July 10, 2013, that the Department had "notified the person in charge" for renewal of liquor licenses that Kelley Williamson's renewal was not to be held up in connection with the Stop Order.
[3] 35 ILCS 120/5j (a provision of the Retailers Occupation Tax Act) and 35 ILCS 5/902 (Income Tax Act).

that event, according to the Stop Order, the Department may seek to revoke Kelly Williamson's Retailer's Occupation Tax Certificate of Registration if Kelley Williamson failed to pay the Debtor's tax liability.[4] The Stop Order directed the recipient to contact the Department immediately to stop collection actions if either Kelley Williamson or the Debtor is under the protection of the Federal Bankruptcy Court.

Kelley Williamson alleges that it did so. On or about February 11, 2013, the Debtor notified the Department of this bankruptcy case and that the court had approved the sales of the Properties free and clear of all liens pursuant to Section 363 of the Bankruptcy Code. The Department failed to act and Kelley Williamson filed the pending motion. At least a portion of the proceeds of the sale are still currently being held in escrow by the Debtor's counsel. (*See* Mot. for Turnover of Funds, Feb. 15, 2013, ECF No. 74.)[5]

II.    Discussion

A. Jurisdiction

Both a motion to approve a sale of property and a motion seeking to enforce that order are proceedings "arising under title 11" and, therefore, are core proceedings. 28 U.S.C. §157(b)(1), (b)(2)(N). In this motion for rule to show cause, Kelley Williamson alleges that the Department violated this court's sale order by issuing the Bulk Sale Stop Order. A "bankruptcy court has jurisdiction over challenges to its orders whatever their basis." *Townsquare Media,*

---

[4] A retail business must hold a valid ROT certificate to conduct retail sales in Illinois. 35 ILCS 120/2a.
[5] On August 13, 2013, the Debtor filed a motion for authorization for Debtor's counsel to transfer $156,945.23 of the proceeds to counsel for BMO Harris to hold in escrow because the funds that Debtor's counsel was holding in his trust account were in excess of the $250,000 limit on FDIC insurance for depository accounts. (Mot. to Authorize, Aug. 13, 2013, ECF No. 151). That motion was granted on August 21, 2013. (ECF No. 156.) Presumably that portion of the proceeds was thereafter transferred to BMO Harris's attorney and is still being held in escrow. On January 30, 2014, BMO Harris filed an adversary complaint to determine the rights to $313,950.46 in sales proceeds alleged to be currently held in escrow by the two attorneys. (Adversary Complaint, Jan. 30, 2014, ECF No. 185).

*Inc. v. Brill*, 652 F.3d 767,771 (7th Cir. 2011) (citing *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009)).[6]

Accordingly, the bankruptcy court has the authority to hear and rule upon this motion.

B. <u>Kelley Williamson Alleges Facts To Show That The Department Violated The Sale Order</u>

Motions for entry of a show-cause order are regularly treated as distinct from other motions. *Sec. Exch. Comm'n. v. Hyatt*, 621 F.3d 687, 696 (7th Cir. 2010). Where a party initiates the civil contempt process with a motion for the issuance of a rule, "the moving party is asking only for a preliminary order directing the alleged contemnor to show cause why the court should not find him in contempt." *Id.*, citing *Sommerfield v. City of Chicago*, 252 F.R.D. 407, 413 (N.D. Ill. 2008) (the motion "is to persuade the court that there should be a hearing at which the factfinder will ultimately evaluate whether a finding of contempt is appropriate on the evidence presented"). For the order to issue, the requesting party need not establish by clear and convincing evidence the violation of "the express and unequivocal command of a court order," *In re Resource Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010), but only satisfy its threshold burden of presenting facts that "implicate defendants in violation of the court's order." *Sommerfield*, 252 F.R.D. at 413 (quoting *Central States v. Transcom Lines,* 1993 U.S. Dist. LEXIS 12427 (N.D. Ill., Sept. 7, 1993)).

Kelley Williamson requests the court to require the Department to show cause why it should not be held in contempt for violation of the Sale Order by its issuance of the Bulk Sales Stop Order and its failure or refusal to release the Stop Order. The Department opposes issuance of the rule, asserting factual and legal arguments. It argues at the outset that the

---

[6] The parties also have expressly consented to having this dispute heard as a contested matter under Rule 9014 rather than as an adversary proceeding. *Id.*

terms of the Sale Order do not apply to the Department's pursuit of its successor liability claims because Kelley Williamson had contractually or by its post-sale conduct voluntarily agreed to subject itself to liability under the bulk transfer laws. The Department then argues that an order entered under Section 363(f) may not "immunize" a purchaser to take "free and clear" of the Department's transferee liability interests. (ECF No. 93, ¶¶14, 15, 17.) This court finds neither of the Department's arguments to be persuasive.

i.      The Sale Order Covers The Purchaser's Potential Transferee Liability

The Department contends that the terms of the Sale Order do not preclude the potential transferee liability of Kelly Williamson under the Illinois bulk transfer laws. In support, the Department generally refers to the two Sale Agreements to contend that the agreements "provide for compliance with the bulk sales provisions of Illinois law." (Resp., ECF No. 93, ¶19.) The actual language in the Sale Agreements is that "[t]he parties agree to comply with any *applicable* bulk transfer laws *and Seller agrees to indemnify and hold Purchaser harmless from any liability or expense by reason of such noncompliance.*" (ECF No. 43, Ex. A, ¶9.2) (emphasis supplied).

We note at the outset that the term "applicable" qualifies the reference to bulk transfer laws. Section 9.2 of the agreement does not admit or conclude that any specific bulk transfer law, including the Illinois laws now cited by the Department, in fact applies to the transaction. Second, the plain import of this provision in the Sale Agreements is to make clear that the purchaser *not* be held liable for noncompliance with any requirement of law that turned out to be applicable. The provision does not, contrary to the Department's contention, show that the parties had agreed or that the court must determine that 35 ILCS 120/5j and 5/902(d) apply to the transaction, or that Kelley Williamson had agreed to withhold a portion from the purchase price or potentially become liable for the Debtor's unpaid taxes. Instead, it appears to show the contrary. This language comes immediately after a

statement that the "parties agree that Purchaser is not assuming nor is it in any way responsible for paying any of the Seller's liabilities, whether pre or post Chapter 11 filing" – "liabilities" which the same provision defines as including "motor fuel taxes, sales, use and employment taxes." (*Id.* at ¶9.1.)

The Sale Order itself makes no reference to bulk transfer laws. Instead it flatly states that the Debtor "is authorized to sell the Properties free and clear of all liens with all liens to attach to the proceeds." (ECF No. 69, ¶D.) The Department does not identify any qualification of that term or any other provision in the Sale Order that suggests that the Debtor's obligation for unpaid motor fuel and sales taxes should remain as a lien on the Properties. Nor has the Department identified any provision in the Sale Order suggesting either that (i) the purchaser is entitled to or required to withhold any portion of the purchase price, or (ii) that the purchaser is personally liable for any of the Debtor's obligations. No reference is made in the Sale Order to motor fuel or sales taxes or to any obligation *on the part of the purchaser* to make such payments or to withhold any amount from the purchase price. (*See, e.g., id.* at ¶G.) Finally, it is notable that the Sale Agreements expressly condition the sales on this court entering a final and non-appealable order to allow the sale of the Properties free and clear of all liabilities "solely on the payment of the Purchase Price herein provided without liability on the part of the Purchaser with respect to any obligations of Seller, including, sales taxes, motor fuel taxes, other current or delinquent taxes and interest and penalties thereon, and other taxes, FICA or withholding liabilities." (ECF No. 43, Ex. A, ¶10.4.)

    ii.    <u>Having Failed To Contest The Motion To Sell Free And Clear, The Department Now Cannot Collaterally Attack The Sale Order</u>

There is no dispute that the Department received timely notice of and had ample opportunity to contest or seek clarification of the motion to approve the sales free and clear.[7] It also is not controverted that the Department did nothing of the sort, despite the

---

[7] Or to otherwise seek relief under Section 363.

unconditional language of the Sale Order requested by the Debtor and Kelley Williamson. Section 363(f) of the Bankruptcy Code permits the trustee to sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if one or more of five enumerated conditions applies. "[O]ne of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent." *FutureSource LLC v. Reuters Ltd.,* 312 F.3d 281, 285 (7th Cir. 2002). The Department does not dispute that it received notice of the two motions to approve the proposed sales of the Debtor's properties. It did not file an objection to either motion nor appear at the hearings on the motions. The Department has not sought to vacate or amend or otherwise contest the January 3, 2013 Sale Order authorizing the sale of the Properties "free and clear." Thus, the Department must be deemed to have consented to the proposed sales. *Id.*

The Department now defends its issuance of the Stop Order by arguing that Section 363(e) of the bankruptcy code entitles it to adequate protection of its liens and interests in the Properties under Section 363(e) of the Bankruptcy Code. The Department, however, neither shows that it has made a proper request for relief under Section 363(e) nor, assuming *per arguendo* that it had, that the Sale Order does not adequately protect the Department's alleged interest.

Section 363(e) provides that "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The Department did not ask the court to prohibit or condition the proposed sales to protect any interest it may have in the

Properties. It has not disputed that the Department received notice of the Debtor's motions to authorize the sales but did nothing until it issued its Stop Order several weeks after the court entered the Sale Order authorizing the sales free and clear and the subsequent consummation of the transactions. Finally, there is no issue that, even then, the Department did not seek relief from the January 2013 Sale Order. In addition, the Sale Order expressly provides that all liens will "attach to the proceeds pursuant to 11 U.S.C. §363." (ECF No. 69, ¶ D.) The Department fails to explain why this provision does not adequately protect any interest it may hold in the Properties.[8]

Accordingly, the Department's belated invocation of Section 363(e) is unavailing. Sale orders, such as this Sale Order, are final, appealable orders, and once the time for appeal has expired, a party to the sale proceeding cannot collaterally attack it. *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543 (7th Cir. 2003). *See also FutureSource*, 312 F.3d at 286 (an "order approving a bankruptcy sale is a judicial order and can be attacked collaterally only within the tight limits that Fed.R.Civ.P. 60(b) imposes on collateral attacks on civil judgments").

   iii.   <u>Transferee Liability Under Applicable Illinois Law Is An "Interest" Subject To § 363(f)</u>

Alternatively, the Department argues that it holds a direct claim against Kelley Williamson and not an "interest in" the property that could be sold free and clear under Section 363.

---

[8] In its Response, the Department asks in the alternative for a determination that if it is not entitled to proceed against Kelley Williamson, then the Department is entitled to any proceeds of the sale that remain in the hands of the Debtor. (Resp., Mar. 27, 2013, ECF No. 93, ¶18.) That request, one that could impact other claimants who may have an interest in sale proceeds but who are not parties to the pending motion, is not properly before the court for determination.

The claim against Kelley Williamson that the Department now asserts arises under Illinois law, specifically Section 120/5j of the Retailers Occupation Tax Act and Section 5/902 of the Income Tax Act. These provisions create an obligation for a purchaser of "the major part" of a business' assets outside the ordinary course of business to notify the Department of the sale and to hold back a portion of the purchase price in an amount sufficient to pay the business's outstanding taxes. If the seller fails to pay its taxes and the Department makes a timely demand, the purchaser is personally liable for the seller's unpaid taxes "up to the amount of the reasonable value of the property acquired by the purchaser."[9]

---

[9] 35 ILCS 120/5j provides, in pertinent part:
  If any taxpayer, outside the usual course of his business, sells or transfers the major part of any one or more of (A) the stock of goods which he is engaged in the business of selling, or (B) the furniture or fixtures, (C) the machinery and equipment, or (D) the real property, of any business that is subject to the provisions of this Act, the purchaser or transferee of such asset shall, no later than 10 business days after the sale or transfer, file a notice of sale or transfer of business assets . . . . If the purchaser or transferee fails to file the above described notice of sale with the Department within the prescribed time, the purchaser or transferee shall be personally liable for the amount owed hereunder by the seller or transferor to the Department up to the amount of the reasonable value of the property acquired . . . . The seller or transferor shall pay the Department the amount of tax, penalty and interest (if any) due from him under this Act up to the date of the payment of tax. . . .
  Any order issued by the Department pursuant to this Section to withhold from the purchase price shall be issued within 10 business days after the Department receives notification of a sale as provided in this Section. The purchaser or transferee shall withhold such portion of the purchase price as may be directed by the Department, . . . to cover the amount of all tax, penalty and interest due and unpaid by the seller or transferor under this Act or, if the payment of money or property is not involved, shall withhold the performance of the condition that constitutes the consideration for the sale or transfer. . . . The purchaser or transferee shall continue to withhold the amount directed to be withheld by the initial order or such lesser amount as is specified by the final withholding order or to withhold the performance of the condition which constitutes the consideration for the sale or transfer until the purchaser or transferee receives from the Department a certificate showing that such tax, penalty and interest have been paid or … no tax . . . is due . . . .
  . . . .
  If the seller or transferor fails to pay the tax, penalty and interest (if any) due from him hereunder and the Department makes timely claim therefor . . . , then the purchaser or transferee shall pay the amount so withheld from the purchase price to the Department. If the purchaser or transferee fails to comply with the requirements of this Section, the purchaser or transferee shall be personally liable to the Department for the amount owed hereunder by the seller or transferor to the Department up to the amount of the reasonable value of the property acquired by the purchaser or transferee.
  Any person who shall acquire any property or rights thereto which, at the time of such acquisition, is subject to a valid lien in favor of the Department shall be personally liable to the Department for a sum

Although the Bankruptcy Code does not specifically define the term "interest" as used in Section 363(f), courts have broadly construed the term. "'[I]nterest' should [not] be understood in a special or narrow sense; on the contrary, the use of the term 'any' counsels in favor of a broad interpretation." *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003) (citing *United States v. Gonzales*, 520 U.S. 1, 5, (1997)). Indeed, the term "interest" was "selected by Congress to avoid 'rigid and technical definitions drawn from other areas of the law.'" 327 F.3d at 545 (quoting *Russell v. U.S.*, 464 U.S. 16, 21, (1983)). In *Qualitech*, for example, the Seventh Circuit determined that the term "interest" as used in Section 363(f) is "sufficiently broad" to include a possessory interest as a lessee." 327 F.3d at 545. *See also Gouveia v. Tazbir*, 37 F.3d 295, 298 (7th Cir. 1994) (restrictive covenant running with land is an "interest" for purposes of Section 363(f)). While some early cases read the term "interest" narrowly and restricted to a form of ownership or property interest, the majority trend construes it expansively to encompass "other obligations that may flow from ownership of the property." *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3rd Cir. 2003). *See 3 Collier on Bankruptcy* ¶ 363.06[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013).

In *TWA*, for example, the Third Circuit held that Section 363(f) authorized a sale free and clear of presale employment discrimination claims. *TWA*, 322 F.3d at 289. The court concluded that employment-related claims are an "interest in property" arising from the purchase of the asset and, thereby covered by the provision authorizing the sale: "[h]ad TWA not invested in airline assets, which required the employment of the EEOC claimants, those successor liability

---

equal to the amount of taxes secured by such lien but not to exceed the reasonable value of such property acquired by him.
35 ILCS 120/5j. 35 ILCS 5/902(d) contains substantially similar language.

claims would not have arisen." *Id.* The Fourth Circuit reached a similar conclusion in an earlier decision, *In re Leckie Smokeless Coal Co.*, where it held that two employer-sponsored benefit plans that sought to collect premium payments arising under the Coal Act from the debtors' successors in interest were asserting interests in property that had already been sold pursuant to Section 363(f). 99 F.3d 573, 586-87 (1996). Indeed, as the Second Circuit recently concluded in *Douglas v. Stamco*, to permit a claimant, in that case a tort claimant, to proceed directly against a Section 363 purchaser on a successor liability theory would be inconsistent with the Bankruptcy Code's priority scheme and core aims. 363 Fed. Appx. 100 (2nd Cir. Feb. 1, 2010).

Courts within this circuit also have found that an "interest" subject to Section 363(f) include the various types of claims that flow from ownership of property. For example, Judge Pallmeyer recently affirmed the bankruptcy court's order requiring the previous holder of a trademark to dismiss its petition to cancel a trademark registration based on the debtor's conduct. *Pusser's (2001) Ltd. V. HMX, LLC*, No. 11-C-4659, 2012 WL 1068756 (N.D. Ill. March 28, 2012). The district court similarly recognized in *Faulkner v. Bethlehem Steel / Intern. Steel Group* that Section 363 gives the bankruptcy court the authority to order the sale of assets free and clear without risk of successor liability to the purchaser, which in that case involved liability for a presale employment discrimination claim against the debtor. No. 2:04-CV-34 PS, 2005 WL 1172748 (N.D. Ind. Apr. 27, 2005). In doing so, the court took note of the "uphill battle" a trustee would otherwise face in liquidating the bankrupt's estate. *Id.*

The case law presented by the Department fails to persuade this court that this clear line of authority may be ignored. In its response the Department offers only what it admits is *obiter dicta* from two Seventh Circuit decisions that "suggest", as the Department puts it, "that

a bankruptcy sale under §363(f) does not prevent the assertion of successor liability claims against the purchaser." (Resp., ECF No. 93, ¶16.) Neither decision, however, involves a situation such as presented here. Nor do the Department's cases construe the pertinent provisions of Section 363 or address the clear trend of authority regarding the application of the statute to questions of successor liability. The Department first references *Zerand-Bernal Group, Inc. v. Cox*, a 1994 decision that affirmed the bankruptcy court's dismissal of an adversary proceeding by a tort claimant against a Section 363 purchaser for want of subject matter jurisdiction. 23 F.3d 159 (7th Cir.). In its decision, the court noted *in dicta* that Section 363(f) was not relevant to the claim because the plaintiff was "not attempting to enforce a lien." *Id.* at 163. The court did not discuss the term "interest" in Section 363(f) or the possibility that such term included successor liability claims.[10] Further, *Zerand-Bernal* is factually distinguishable because it dealt with future claims that had not arisen as of the time of the sale. Here, the Debtor's tax obligations to the Department had already arisen by the time of the motions to approve the sales and the Department had the opportunity to assert its interest to challenge the motions before the Sale Order was entered. Indeed, the *Zerand-Bernal* decision stressed that the state law successorship doctrine did not apply because the plaintiff "had a chance to obtain a legal remedy against the predecessor, even so limited a remedy as that afforded by the filing of a claim in bankruptcy." 23 F.3d at 163.

The Department also references *dicta* found in *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48(7th Cir.

---

[10] As noted by *Collier*, the term "interest" must be broader than liens, since section 363(f)(3) provides for particular treatment when "such interest is a lien." 3 *Collier on Bankruptcy* ¶363.06[1] ("Obviously there must be situations in which the interest is something other than a lien; otherwise, section 363(f)(3) would not need to deal explicitly with the case in which the interest is a lien.").

1995). However, that case does not involve a Section 363(f) sale. *Id.* at 50 n.2. As the *Tasemkin* court cautioned: "[w]e need not decide whether New Tasemkin's acquisition of Old Tasemkin's assets sufficiently approximated a trustee sale, which under § 363(f) can be made free and clear of existing interests . . . , this case does not directly implicate the Bankruptcy Code, since the underlying bankruptcy proceeding is long over." *Id.* *Zerand-Bernal* and *Tasemkin* simply stand for the proposition that the mere policy concerns of not 'chilling' bankruptcy sales and of increasing the value of bankruptcy estates are not justifications for barring successor liability claims against purchasers of assets from bankrupt entities, especially where such claimants did not have an effective right to assert their interests in the bankruptcy proceeding.

In general, "the purpose of bulk sales laws is to afford the fullest possible protection to creditors of persons who fraudulently transfer their stock in trade in bulk, by reaching a category of fraudulent bulk transfers that are not reached by the fraudulent transfer laws." *Monastra v. Konica Bus. Machines, U.S.A., Inc.*, 43 Cal. App. 4th 1628, 1643 (Cal. App. Ct. 1996). *See also F.D.I.C. v. S. Prawer & Co.*, 829 F. Supp. 453, 456-57 (D. Me. 1993) (purpose of Bulk Sales Act to protect creditors against fraudulent sales by debtors and to permit creditors to follow the goods of the debtor into the hands of the transferee); *Uarco, Inc. v. Peoples Bank & Trust Co.*, 414 F. Supp. 1219, 1220 (D. La. 1976) ("to prevent small, impecunious merchants from selling their only assets, their inventories, overnight and disappearing with the proceeds."). The Illinois laws at issue in this case no doubt have a similar general aim, but focus on the protection of the specific right of the State of Illinois to collect sales and other taxes rather than to protect creditors in general. Such interests are provided for and protected by

the Bankruptcy Code through provisions such as Section 363, including the right to object to a sale free and clear or to demand adequate protection. *See Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 547 (7th Cir. 2003) ("section 363 itself provides for a mechanism to protect the rights of parties whose interests may be adversely affected by the sale of estate property.").

There does not appear to be any good faith dispute that any liability on the part of Kelley Williamson for the Debtor's unpaid taxes created by 35 ILCS 120/5j and 35 ILCS 5/902 is an obligation that "flow[s] from ownership of the property" purchased in the Section 363 sale. *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3rd Cir. 2003). The parties do not suggest and the court cannot readily conceive how Kelley Williamson would become liable for the Debtor's unpaid taxes if it had not purchased the assets from the Debtor. Kelley Williamson's potential liability does not appear to be in the nature of a sales tax or other tax on the transaction itself as the Department itself appears to concede. It is not based on the purchase price paid by the purchaser or value of property it acquired, but rather on the seller's outstanding obligations to the state. Indeed if the Debtor had owed no taxes as of the date of the sale, then it appears that no liability would have arisen under 35 ILCS 120/5j or 35 ILCS 5/902.

Finally, the very Illinois statutes on which the Department relies appear to limit Kelley Williamson's potential liability to "the reasonable value of the property acquired by the purchaser." Dept. Mem. ¶¶ 1,2, 15. This connection to the property's value makes the liability much more similar to a lien than even the successor liability claim found to be an "interest" in *TWA*. We, therefore, must conclude that any potential liability of Kelley Williamson under 35

Case 12-83168   Doc 194   Filed 03/28/14   Entered 03/28/14 14:47:48   Desc Main
                  Document      Page 16 of 16

ILCS 120/5j and 35 ILCS 5/902 is an "interest" subject to the Section 363(f) relief granted by the Sale Order.

III.  Conclusion

Kelley Williamson has presented sufficient legal and factual bases for the court to order the Department to show cause why its issuance of the Stop Order, failure to rescind the Stop Order and related actions are not in contempt of the court's January 3, 2013 order that authorized the Debtor's sale of the Properties to Kelley Williamson "free and clear." Accordingly, the court will issue a rule to show cause against the Department by separate order and continue the matter for hearing on why the Department should not be held in contempt.

A rule shall issue by separate order consistent with this Memorandum Opinion.

ENTER:

DATE: March 28, 2014

Thomas M. Lynch
United States Bankruptcy Judge