UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re Vista Marketing Group Ltd., ) | Bankruptcy No. 12-B-83168 |
| ) | |
| Debtor. ) | Chapter 11 |
| ) | Judge Lynch |
| ) | |

### MEMORANDUM OPINION

The Rock River Water Reclamation District is an Illinois Sanitary District that that manages and reclaims wastewater for residential, industrial and business properties located throughout greater Rockford. These properties include two gas station convenience stores originally constructed, owned and operated by the Debtor, Vista Marketing Group Ltd. On January 3, 2013, after notice and a hearing, this Court approved the Debtor's motion to sell these properties to Kelley Williamson, Ltd. "free and clear of all liens with all liens to attach to the proceeds." (ECF No. 69, ¶ D (the "Sale Order").) The District received notice of and did not object to the motion and Sale Order.

Shortly afterward Kelly Williamson closed on the sale. The parties to this motion agree that upon receiving notice of the sale, the District provided the title company with its final bill for all amounts due through the closing date and the District's bill was paid from the proceeds of sale. Less than a month later, however, the District sent to Kelley Williamson another bill for a "connection fee surcharge" as to one of the properties. When the new owner protested, the District responded, asserting that "the connection charge . . . runs with the land and is specific to the property [and, therefore,] cannot be discharged in bankruptcy." Next, the District sent Kelly Williamson a "Final Notice of Shut Off." Unsuccessful in its attempts to convince the District to

relent, Kelley Williamson now seeks a rule for the District to show cause why its efforts to collect the connection fee surcharge do not violate the Sale Order. For the reasons discussed below, motion will be GRANTED and a Rule to Show Cause shall enter against the District.[1]

## I.    FACTUAL SUMMARY

The principle facts are not in dispute. Vista Marketing Group, Ltd. constructed a gas station convenience store located in Rockford at 5542 East Riverside Boulevard in 2006. In the course of construction, Vista applied to the District[2] for a sewer construction permit. Vista estimated a flow of 1,350 gallons per day for the facility in its application. According to an October 19, 2006 letter from the District to Vista, this figure results in an estimated PBI ERU – or "plant buy-in ... equivalent residential unit" usage of 4 ERUs to be charged a connection fee of $478.00 per ERU, plus an additional payback charge of $170.80 for another property. Vista paid the District a $2,082.80 connection fee for the East Riverside Property based on the estimated ERU and completed the sanitary sewer connection. On October 30, 2006, the District issued a connection permit for the premises.

Vista owned and operated the East Riverside facility, which by then included a car wash, when it filed its voluntary Chapter 11 petition on August 20, 2012. Upon receiving notice of the bankruptcy filing, the District "removed" $2,320.67 in past due user fees owed by the Debtor. Additional past due fees were removed on December 31, 2012.[3] On November 21, 2012, Vista, debtor-in-possession, filed motions to approve the sale of its gas station / convenience stores

---

[1] The following sets forth the Court's findings of fact as required by Fed. R. Bankr. P. 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are adopted as such.
[2] The District is an Illinois Sanitary District organized under the Illinois Sanitary District Act of 1917. 70 ILCS 2405/0.1, *et seq.*
[3] The District has written off billed amounts owed by the Debtor totaling $3,348.19 as a result of the bankruptcy.

located at 1021 S. Meridian Road and at East Riverside Boulevard to Kelley Williamson Company free and clear of all liens and other interests. The District did not object to the Debtor's motions. In a single order dated January 3, 2013, the Court granted these motions after notice and a hearing at which the District did not attend. (ECF No. 69.)

Under the terms of the Sale Order, the properties were to be sold "free and clear of all liens with all liens to attach to the proceeds pursuant to 11 U.S.C. § 363." The Sale Order further provided that:

> As to the proceeds from the sale of the real estate commonly known as 5542 E. Riverside Boulevard and related personal property, the Debtor is authorized and directed to pay all net proceeds, after the payment of all normal and customary closing costs, including payment of past due and accrued real estate taxes, first to BMO Harris Bank, N.A. in the amount necessary to satisfy all amounts due on its first mortgage on the Property commonly known as 5542 E. Riverside Boulevard. Next, the Debtor is authorized and directed to pay such amounts as are necessary to satisfy the second mortgage of Rockford Local Development Corporation. All remaining proceeds from the sale of the Riverside Property, with all liens, claims, encumbrances and other interest into and against those remaining proceeds to attach thereto are to be held subject to further order of the Bankruptcy Court.

(*Id.*)[4] The Sale Order states that "[t]he Court retains jurisdiction with respect to all matters arising from or related to the interpretation, implementation and/or enforcement of this Order. (*Id.*) A copy of the Sale Order was sent to the District following its entry.

Kelly Williamson purchased the properties on January 31, 2013. (ECF No. 229, ¶ 19.) The District, aware of the sale, provided the title company its final bill for all amounts due for the properties through the closing date. Its bill included the amount of $1,507.78 for the East

---

[4] The circumstances and history of the proceedings on the motion and Sale Order are further described in the Court's Memorandum Opinion entered in a related adversary proceeding, *BMO Harris Bank, N.A. v. Vista Marketing Group, Ltd.*, 548 B.R. 502 (Bankr. N.D. Ill. 2016).

Riverside Property. The title company paid this amount to the District on January 31, 2013 from the sale proceeds. (ECF No. 229, Ex. 4.) The District updated its records to reflect Kelley Williamson as the new owner of the properties.

On or about February 26, 2015, the District sent Kelley Williamson an assessment of $6,214.00 for what it styled as a "connection fee surcharge" for the East Riverside property. According to the District's letter, "recent billing records" revealed an "average flow" of 17 ERUs into the system. (ECF No. 229, Ex. 6.) The parties have stipulated that the "recent billing records" mentioned in the letter refers to "the four quarterly billing cycles for the property immediately prior to the issuance of the surcharge." (ECF No. 244.) Subtracting from this the 4.00 ERUs reflected in the original surcharge assessment, the District calculated an additional surcharge of $6,214.00, or 13.00 ERUs at $478.00 per ERU.[5]

Kelley Williamson contested the surcharge. In a letter dated June 3, 2015, its attorneys asserted that the claim for surcharge had been disposed of (at least as against their client) by the Sale Order. The District responded that "the connection charge is specific to the property and touches and concerns the land and therefore runs with the land. Because it runs with the land and in specific to the property, it cannot be discharged in bankruptcy. Real property cannot be sold free and clear of a connection charge." (ECF No. 229, Ex. 8.) Finally, the District issued a "Final Notice of Water Shut Off" dated September 1, 2015 stating that water service to the East Riverside property would be disconnected on or after September 12, 2015. (ECF No. 217, Ex. 2.) According to the notice, "[p]artial payments will not stop water shut off. Water service will be

---

[5] The District has stipulated that it "does not consider the transition between Debtor and Kelley Williamson to have been a change in use" of the property, and does not base its surcharge on provisions in the municipal code that provide for charges based on change of use. (ECF No. 244.)

reconnected only upon payments in full of all amounts due." (*Id.*, ¶ E.) Two days later, Kelley Williamson filed the pending motion.[6]

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Kelley Williamson seeks to enforce the Court's sale order which approved the sale of the Riverside Property free and clear of liens in the property pursuant to Section 363 of the Bankruptcy Code. (ECF No. 69.) A "court retains jurisdiction to enforce its injunctions," *Cox v. Zale Del., Inc.*, 239 F.3d 910, 917 (7th Cir. 2001), and the Sale Order entered by this Court expressly retained "jurisdiction with respect to all matters arising from or related to the interpretation, implementation and/or enforcement" of the order. (ECF No. 69.) In its motion, Kelley Williamson alleges that the District violated the Sale Order by assessing the connection surcharge against the East Riverside property. A "bankruptcy court has jurisdiction over challenges to its orders whatever their basis." *Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 771 (7th Cir. 2011) (citing *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009)). Both a motion to approve a sale of property and a motion seeking to enforce that order are proceedings "arising under title 11" and, therefore, are core proceedings. 28 U.S.C. § 157(b)(1), (b)(2)(N).

Although the Supreme Court has held that certain matters designated as "core" are not within bankruptcy courts' constitutional authority to enter final orders, this is not such a matter. *Stern v. Marshall*, 546 U.S. 500 (2011). The motion seeks to enforce an order entered by the Court pursuant to authority granted under Section 363 of the Bankruptcy Code and, therefore, "stems from the bankruptcy itself," such that this court has both constitutional and statutory

---

[6] The District agreed not to take further action while this motion is pending.

authority to enter a final order in this proceeding. *Stern v. Marshall*, 546 U.S. 500 (2011). Additionally, both Kelley Williamson and the District have expressly acknowledged this Court's jurisdiction over the motion and expressly consent to the Court deciding the issues raised in their Stipulation dated October 5, 2015. (ECF No. 229.) *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1942 (2015).

### III.  DISCUSSION

Pursuant to Section 363(f) of the Bankruptcy Code, a trustee or Chapter 11 debtor in possession may sell property "free and clear of any interest in such property of an entity other than the estate" if one of five enumerated conditions applies. 11 U.S.C. § 363(f). Of particular significance is the fifth condition, namely, that the entity asserting the interest in such property "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5). While this Chapter 11 case was pending, the debtor-in-possession sold two gas station facilities to Kelley Williamson Co. pursuant to this Court's order authorizing the sales to go forward free and clear of any interest of an entity other than the bankruptcy estate pursuant to Section 363(f). At issue is whether a charge imposed by the District against the purchaser after the court-authorized sale is either solely a claim against the Debtor, Vista Marketing Group, Ltd. or was an interest terminated by the sale under Section 363(f). Kelley Williamson argues that it was and asks this Court to issue a rule for the District to show cause why it is not in violation of this Sale Order.

In response, the District first argues that the obligation to pay its connection fee surcharge runs with the land is not the type of "interest" that is subject to a Section 363(f) determination and order. Although not expressly defined in the Bankruptcy Code, the term "interest" has been construed broadly for purposes of Section 363(f). According to the Seventh Circuit, the term

"'interest' should [not] be understood in a special or narrow sense; on the contrary, the use of the term 'any' counsels in favor of a broad interpretation." *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC,* 327 F.3d 537, 545 (7th Cir. 2003) (citing *United States v. Gonzales,* 520 U.S. 1, 5 (1997)). Arguing that the connection charge is a covenant that runs with the land, the District relies on *Gouvenia v. Tazbir,* 37 F.3d 295, 299 (7th Cir. 1996) to suggest that its interest, like that of a restrictive covenant, is not eliminated by Section 363(f). (RRWRD Br. at 3.) *Gouvenia,* however, does not hold that a covenant running with the land is not an "interest" for purposes of Section 363(f). To the contrary, the Seventh Circuit concluded in that case that a restrictive covenant against non-residential land use *is* an interest for purposes of Section 363(f): "[h]aving already determined that the Lincoln Covenant is a property interest, we must now decide whether subsection (5) applies to the Lincoln landowners." 37 F.3d at 299.

In contrast to the restrictive covenant at issue in *Gouvenia,* the District here does not suggest that it held a non-monetary interest and could not have been compelled to accept a money satisfaction for that interest at the time the Court ruled on the section 363 motion. Rather, the District seeks to enforce its right to receive a liquidated sum as the connection fee surcharge which, as discussed below, originated before the authorized sale and pre-petition at the time of the 2006 sewer connection. Indeed, one would be hard-pressed to present a clearer example of a situation where the interest-holder could be compelled to accept a money satisfaction of its interest under subsection (f)(5) than the calculable monetary obligation asserted by the District in its surcharge bill and disconnection notice.

Moreover, it is uncontroverted that the District failed to timely object to the motion to sell or to asserted its interest upon receiving notice of the proposed sale of the properties "free and clear." Section 363(f)(2) provides that property may be sold free and clear of an interest when

the interest-holder consents. 11 U.S.C. § 363(f)(2). The Seventh Circuit has held that for purposes of Section 363(f), "lack of objection (provided of course there is notice) counts as consent." *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002). The District did not appeal the Sale Order, did not seek to stay the order and has not alleged that Kelley Williamson purchased the property in bad faith. Thus, pursuant to Section 363(m) the validity of the sale cannot now be attacked. 11 U.S.C. § 363(m).[7] As the Seventh Circuit has emphasized, even if a "bankruptcy court should not have stripped away [an] interest" in property sold pursuant to Section 363(f), Section 363(m) prevents courts from later "resurrecting that interest in the real estate itself." *In re River West Plaza-Chicago, LLC*, 664 F.3d 668, 672 (7th Cir. 2011) (discussing systematic need for finality in Section 363(f) sales).

The District next argues that its surcharge is more akin to a tax or charge on Kelley Williamson's increased usage following the authorized sale, rather than a fee for the initial connection.

The District is an Illinois Special District established pursuant to the Sanitary District Act of 1917. 70 ILCS 2405/3 *et seq.* The enabling act grants the District the "power to collect a fair and reasonable charge for connection to its system in addition to those charges covered by normal taxes, for the construction, expansion and extension of the works of the system, the charge to be assessed against new or additional users of the system and to be known as a connection charge." 70 ILCS 2405/7. The Act notably provides that:

> The "charge for connection shall be determined by the District and may equal or exceed the actual cost to the District of the construction, expansion or extension of the works of the system required by the connection. The funds

---

[7] "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." *Id.*

> thus collected shall be used by the Sanitary District for its general corporate purposes with primary application thereof being made by the necessary expansion of the works of the system to meet the requirements of the new users thereof.

*Id.*

Although the term "connection charge" might be seen as limited to a charge for the actual and initial connection to sewage line, Illinois courts have not interpreted the phrase used in the enabling statute so narrowly. As the Illinois appellate court explained in its analysis of a substantially similar statute authorizing municipal sewage systems:

> the legislative use of the phrase "connection charge" was intended as a mere name or label by which the assessment is to be known. The phrase was not intended by the General Assembly to import a limitation on the power delegated nor was it intended as a limitation on the exercise of the power by the municipality. By virtue of the fact that section 11-150-1 is a statute authorizing the collection of fees from property owners who become users of the system, as opposed to authorizing connections for the system, it is readily apparent that the exercise of the statutory authority by a municipality against a connecting property owner is not contingent upon the moment of his connection, but upon the fact that the owner has commenced using the system. The time at which the connection to the system is made is a matter of no consequence.

*City of Pontiac v. Mason*, 365 N.E.2d 145, 149 (Ill. App. Ct. 3d 1977) (citing (65 ILCS 5/11-150-1)). The court went on to explain the construction or "extension of the main sewer usually precedes actual use by owners or tenants" and, therefore, "sewer construction cost recoupment is [often] deferred until the property is developed and the identity of the ultimate user is known." 365 N.E.2d at 147. Similarly, the appellate court in a later case, *La Salle Nat'l Bank v. City of Warrenville*, held that municipalities are "free to levy the 'tap-on' or 'connection' charges at issue here to new users of the system." 434 N.E.2d 549, 552 (Ill. App. Ct. 2d 1982).

The District's enabling legislation at the time of the initial connection in 2006 allowed the District to impose additional surcharges on an ongoing basis to the extent future actual use

exceeded the original estimate of use used to calculate the initial charge. Pursuant to Title 5, Article VII, Section 1 of the District's ordinance in effect on October 30, 2006, billable parameters including flow were to be "reviewed annually by the Engineering Manager to determine if the billable parameters for the permitee, or any of the parameters, have increased during the preceding year or have exceeded the estimated values used in the" original application. (Stipulation, ECF No. 238, ¶ 3.) If the actual parameters are found to exceed the initial estimate by more than one ERU, the user was "required to pay the difference between the connection charge paid at the time of hook up or the most recent annual adjustment, whichever is later, calculated at the then current rates established by the District." (*Id.*) The ordinance further provided that if "a user's billable parameters decrease or are less than the estimated flows from the [Industrial/Commercial Questionnaire] no refunds will be paid." (*Id.*)

Under that provision, Kelley Williamson could be charged a connection surcharge for increased usage of the system, it. However, did not present any evidence of Vista's actual usage between 2006 and 2012 or to otherwise show whether Kelley Williamson's usage actually exceeded Vista's usage. But that is of little consequence because the statutory scheme for usage adjustments was materially revised in 2010, well before the assessment under consideration here took place. On January 25, 2010, the District amended Title 5, Article VII, Section 1 to replace annual readjustment with a single readjustment after 3 years. Specifically, under the revised ordinance, billable flow:

> shall be reviewed by the Plant Operations Manager and Engineering Manager after three (3) full years of discharge to determine if the billable flows have exceeded the estimated values used in the [Industrial/Commercial Questionnaire]. If the billable flows exceed the estimated value by one or more ERUs the user shall be required to pay the difference between the connection charge paid at the time of connection and the composite connection charge as determined at the end of the three year period. The fee due shall be calculated at the then current rates. No refunds shall be issued

10 of 15

in the event the three year average discharge is less than the original estimated discharge.

(Stipulation, ECF No. 238, ¶ 5.) This is the version of the ordinance still in effect.

The District argues that the amended ordinance and its language "after three full years of discharge" simply mean that it cannot assess a surcharge *before* three years of discharge, not that the statute limits the District to looking at the flow during the initial 3-year period. The language of the amended provision, however, do not to support the interpretation now suggested by the District. The following sentences of the amended ordinance explicitly refer to "the end of <u>the</u> three year period" and "<u>the</u> three year average" and do not use the phrasing of the earlier version of the ordinance which referenced water flows "during *the preceding* year." Had the amended ordinance been intended to apply to multiple reviews and water flows during *any* three-year period, those enacting the amended ordinance could have easily adopted the language from the earlier version rather than make the changes found in the amendment. *See Paszkowski v. Metro. Water Reclamation Dist.*, 820 N.E.2d 401, 405 (Ill. 2004) ("The cardinal rule of statutory interpretation, to which all other rules are subordinate, is to ascertain and give effect to the intention of the legislature."); *see also K. Miller Constr. Co. v. McGinnis*, 938 N.E.2d 471, 481 (Ill. 2010) (An "amendatory change in the language of a statute creates a presumption that it was intended to change the law as it previously existed.")

The District is correct that the ordinance does not impose a specific deadline to *assess* the surcharge, but the provision only authorizes a surcharge based on the initial three years of discharge. The statutory authority to impose annual surcharges ended when the ordinance was amended in 2010 and the three-year reference period under the amended ordinance ended a year

earlier in 2009.[8] Both of these changes became effective well before the Section 363(f) sale and in fact more than two years before the bankruptcy petition. Therefore, under the terms of the District's ordinance any valid surcharge had to be based on the Debtor's usage, not Kelley Williamson's, and was assessable as of the petition date and date of sale.[9] To the extent any such obligation relates to an interest in the Riverside Property, Kelley Williamson took the property free and clear of such interest.

Finally, the District argues that its assessment is a form of tax that the Tax Injunction Act prohibits this Court from enjoining. The Tax Injunction Act provides that federal district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. This statutory prohibition has been held to apply to any tax, including municipal and local taxes. *Hager v. City of West Peoria*, 84 F.3d 865, 868 n.1 (7th Cir. 1996) (citing *Schneider Transport, Inc. v. Cattanach*, 657 F.2d 128, 132 (7th Cir. 1981)).

The Seventh Circuit, noting the policy behind the Tax Injunction Act and its jurisdictional nature, has expressed a preference for a mechanical test rather than a functional test in determining whether an obligation is a tax for purposes of the act. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 727 (7th Cir. 2011) (*en banc*). The court in *Empress*

---

[8] If the court were to read the three-year period to begin on the date of the amendment, January 25, 2010—and there is nothing in the amendment to suggest such a result—two-and-a-half years of the period would be pre-petition and less than a month would have been post-sale. But, even if a small portion of the period were attributable to Kelley Williamson, the February 2015 letter from the District stated that the assessment was based on billing records from what the parties stipulate to have been the twelve months preceding the date of the letter—none of which billing periods would fall within three years after the amendment. That letter was dated over two years after the sale, five years after the amendment to the ordinance, and 8-1/2 years after the initial connection, and the District has offered no evidence to show either that such billing records were indicative of Kelley Williamson's usage in early 2013 or that it materially differed from Vista's pre-sale usage.

[9] Article VIII of the ordinance (both pre and post-amendment) does provide for a surcharge due to "change of use" that imposes an additional burden on the system. However, the District has stipulated that its assessment was not based on this provision and that it does not contend that the transition of the property from the Debtor to Kelley Williamson constituted a change in use. (ECF No. 244.)

articulated this test as one distinguishing between on the one hand "exactions designed to generate revenue" which are taxes for purposes of the act, and on the other hand fines, which are "exactions designed ... to punish," or fees, which are exactions designed "to compensate for a service that the state provides to the persons or firms on whom or on which the exaction falls." 651 F.3d at 728. Whether an exaction is "a 'tax' for purposes of the Tax Injunction Act is a question of federal rather than state law." The label used by the legislature is not dispositive. *Id.*

At issue here is whether what is called a "connection charge" in the Illinois Statute and the District's ordinance is a tax or a fee for purposes of the Tax Injunction Act. The court in *Empress* noted that the "line between a tax and a fee ... is sometimes fuzzy," 651 F.3d at 729.

> If the fee is a reasonable estimate of the cost imposed by the person required to pay the fee, then it is a user fee and is within the municipality's regulatory power. If it is calculated not just to recover a cost imposed on the municipality or its residents but to generate revenues that the municipality can use to offset unrelated costs or confer unrelated benefits, it is a tax, whatever its nominal designation.

651 F.3d at 728-29. On the one hand, the Illinois Sanitary District Act states that the charge may "exceed the actual cost ... of the construction, expansion or extension of the works of the system required by the connection," and its proceeds may be used for a sanitary district's "general corporate purposes." 70 ILCS 2405/7. On the other hand, the statute makes clear that the charge is "to be assessed against new or additional users of the system" and the "primary application [of the funds collected shall be for] the necessary expansion of the works of the system to meet the requirements of the new users thereof." *Id.* Thus, while the funds are not strictly limited to funding or reimbursing the costs of providing services to the payees, that is the primary intent of the charge.

The Seventh Circuit has indicated that "in a borderline case factors that distinguish between rather similar-looking exactions may be useful tools for determining on which side of

the line the case falls." 651 F.3d at 729. Construing the Sanitary District Act, the Illinois Supreme Court has found that reasonable connection "charges have been uniformly sustained as a service charge rather than a tax." *Hartman v. Aurora Sanitary Dist.*, 177 N.E.2d 214, 219 (Ill. 1961). *Hartman* emphasized the voluntary nature of the decision to use the sewage system, noting that it "involves a situation where a privilege is extended to the property owners of the area to avail themselves of the use of the sewer or not as they see fit, and where the price to be paid for the privilege is tentatively fixed beforehand." 177 N.E.2d at 218. *But see Schneider Transport, Inc. v. Cattanach*, 657 F.2d 128 (7th Cir. 1981) (finding Wisconsin registration fees deposited in a fund available for purposes other than for the purposes for which the funds were created to be a tax).

Additionally, even if the asserted obligation were a tax, Kelley Williamson does not ask this Court to impose a new injunction to prevent collection of such liability. The District is already enjoined by this Court's January 2013 Sale Order. The invocation of the Tax Injunction Act at this point amounts to a collateral challenge to the 2013 order. As the Supreme Court emphasized in *Travelers Indem. Co. v. Bailey*, "the need for finality forbids a court called upon to enforce a final order to tunnel back for the purpose of reassessing prior jurisdiction de novo." 557 U.S. 137, 154 (2009) (internal citation and quotation marks omitted). This is because even "subject-matter jurisdiction ... may not be attacked collaterally." 557 U.S. at 152 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 n.9 (2004)). Applying the rule in *Travelers* to a matter similar this, the district court in *In re Old Carco LLC* held that where a party had notice and the opportunity to contest a sale order, such party is barred by res judicata from attempting to collaterally attack the original sale order by asserting the Tax Injunction Act. 2014 WL 6790781

(S.D.N.Y. Dec. 1, 2014). Here, too, the District cannot now invoke the Tax Injunction Act to challenge this Court's 2013 Sale Order.

## CONCLUSION

The Court finds that the District violated the Sale Order by attempting to enforce a terminated obligation of the Debtor for a connection surcharge and that this Court has jurisdiction over the matter. Accordingly, the Court will issue contemporaneously with this opinion a rule to show cause why the District's violation was not willful and why the District is not in civil contempt.

September 12, 2016                    ENTER:

 

_____
Thomas M. Lynch
United States Bankruptcy Judge